BURT P. GATES *vs.* NATIONAL BUILDING, LOAN & PROTECTIVE UNION.

July 1, 1891.

**Agency—Contract Construed.**—A contract by which plaintiff agreed to act as defendant's agent for the sale of "shares of its stock," construed to refer to the form or kind of stock which the defendant was issuing at the time the contract was executed.

Appeal by defendant from an order of the district court for Hennepin county, *Smith*, J., presiding, overruling its demurrer to the complaint in an action to recover $10,000 damages for breach of the contract considered in the opinion.

*Keith, Evans, Thompson & Fairchild* and *George D. Emery*, for appellant.

*Hart & Brewer*, for respondent.

MITCHELL, J. By the contract set out in the complaint, the defendant appointed the plaintiff "its special and controlling agent for five years for the state of Ohio, for the purpose and with the authority to solicit and receive applications for the *shares of stock* of the association, and to receive membership fees therefor, and to appoint subagents in that state for these purposes, and with authority to solicit and receive applications for membership shares and admission fees." The plaintiff was also to organize local advisory boards, and to perform such other services in that state as the defendant might require of him. He was to give his whole time, energies, and exclusive attention to the business of the defendant, excepting two months' vacation in each year. He was also responsible for all membership fees upon applications for shares received by him or his subagents. His sole compensation was to be, not a fixed salary, but $1.70 out of each membership fee collected by himself or his subagents, which was to cover not only his and their services, but also all expenses incident to the establishment and prosecution of the business within the prescribed territory. He was also bound, during the entire duration of the contract, to procure to be taken at least 500 shares per month, and to account to the defendant for 30

cents per share on all shares sold. The complaint alleges that the contracts of membership uniformly made by defendant with its shareholders prior to and at the time of the execution of this agency contract were in the nature of tontine investments, in which strict forfeiture was the result of non-payment of instalments by the investor, and by which the association, in reliance upon the large share of forfeitures, undertook, for an entire aggregate payment of $46, extending through a period of five years, to repay the investor $100 at the end of that period; that this form of investment was very popular and salable in the state of Ohio, where plaintiff, during the time he worked under the contract, secured a profitable business in the sale of shares. It also alleges that the contract between plaintiff and defendant was entered into solely with reference to procuring contracts of membership of the kind above described, and that none other were in the contemplation of the parties at that time. The complaint further alleges that, after the plaintiff had worked about eight months under this contract, the defendant "refused to receive any new members, or to issue any new stock, or to allow him to solicit new members or sell new shares, except upon an entirely new and radically different plan and contract from that with reference to which the agency contract was made, and *from all prior membership contracts authorized or made by the defendant;*" that by the new plan the defendant proposed to issue "non-forfeitable" stock, by which it only proposed to return to the investor $100 at the end of six and a half years, upon an investment of $68.30; that this new form of stock was practically unsalable in the state of Ohio, so that plaintiff's business was entirely broken up and necessarily discontinued.

The question presented by the demurrer to the complaint is whether this change in the form and character of the stock constituted a breach of the agency contract. The contention of the defendant is that, as the agency created was to solicit and receive applications for "shares of stock," no particular kind of stock being specified, it was not restricted to the particular kind of stock that it was issuing at the time the contract was made, but was at liberty to change the form of its shares and membership contracts from time to time as it deemed expedient. Had the constitution of the defendant, at the

time this contract was executed, expressly authorized and provided for the issuing of both kinds of stock, we think it might be fairly held that the parties contracted with reference to the issue of either, although only the tontine or forfeiture kind had been actually issued up to that time. But we think the fair construction of the complaint is that the "tontine" or "forfeitable" stock was not only the only kind actually issued, but the only kind which the association had authority to issue, at the time of the execution of this contract; or, if this is construing its allegations too strongly in favor of the pleader, it at least means that the association had adopted this as the form of its stock, and that it was the only kind the issue of which it had authorized or provided for at that time, although the articles of association, silent as to the form of stock, might have been sufficient, without amendment, to authorize the association to adopt any form of stock it saw fit. But under either state of facts we think that, under the circumstances, and especially in view of the peculiar provisions of this contract, the parties must be deemed to have contracted with reference to substantially the kind of stock which the defendant had adopted and was issuing at that time, and that they did not have in contemplation so radical a change in the manner of doing business as to virtually change the entire subject of plaintiff's agency. In view of the provisions of the contract already referred to, it is not to be supposed that any man capable of understanding their effect would assume such obligations without such knowledge of the stock he was to sell as would enable him to judge of the probable success of the enterprise. Not only was his compensation and his reimbursement for expenses dependent on the sales he could make, but he absolutely bound himself to sell 500 shares per month for the entire five years, and account to the defendant for 30 cents per share. Under the construction placed upon the contract by defendant, the change in the character of its stock would not only deprive the plaintiff of all compensation, but also render him liable for $150 per month damages for the whole of the remainder of the five years. Defendant's counsel, seeing the force of this, attempted to argue that a substantial change in the form of stock, although constituting no breach of the contract, would relieve the plaintiff from

liability on his covenant to sell 500 shares per month. Such a position is entirely illogical, for nothing can relieve one party from the performance of his contract but the breach of it by the other party.

Order affirmed.